08 Liberty Mutual Fire v. Fowlkes Plumbing. And we'll hear from Mr. Lawrence. Yes, Your Honor. May it please the Court, as the Court observed, my name is Dick Lawrence. I'm with the law firm of White, Kinson, Eager, and Jackson, Mississippi, and this Memorial Day will be my 40th year at that same firm. So, as the Court observed, I represent Fowlkes and that is one of three appellants in this case, and the other two appellants have agreed that I will give the arguments for all three appellants. As the Court is aware, the key issue in this case is whether there is a complete waiver of subrogation in a construction contract that was entered into between Liberty Mutual's insured Choctaw County and the general contractor Sullivan Enterprises, so that, as a result of this fire loss, whether there is a complete waiver of subrogation. Let me just ask you a question. Do you represent an insurer for these appellants, or are they hanging out without insurance? Your Honor, they have insurance. They have limited insurance. I don't know if I can disclose the amount. That might be improper. No, I don't care. They do have some insurance. Oh, okay. I'm being paid by the insurance company. Okay. Okay. But anyway, so they Before you get too deep into the subrogation waiver issue, I wanted to ask you about their wasn't in the minutes of the school board approvals? Yes. And I hadn't really seen that issue before, but in these Mississippi Supreme Court cases from the last couple of years, wellness and KPMG really seem to be very strict cases. I don't quite understand the reasoning, but very strictly say, you know, these provisions need to be in the minutes of the public body's meeting to be considered accepted. Your Honor, if I understand the argument, there's a base contract, the A-201, and it incorporates by reference the general conditions that has the waiver of subrogation. Now, as I understand the argument, they're not contending that the base contract that incorporates by the reference was not approved. In fact, we have a letter from Tom Hood in the record at page 524. That was the county's attorney saying we approve it. All right. But the minutes say all I see is there was a motion to accept the bid from Sullivan Enterprises for the 1935 window restoration project. It goes on a few more sentences. It doesn't discuss any of these provisions of the contract. And again, it doesn't make a lot of sense to me, but these recent Mississippi Supreme Court cases seem to say if in those cases it was arbitration, if the arbitration clause itself isn't in the minutes, it's not enforceable. How do you deal with those cases, or am I reading them too strictly? Well, you know, the first thing we do is that that's not . . . they have not raised that issue on appeal, as the Court knows. And then Judge . . . I think Judge Davidson dealt with that issue very appropriately and resolved that issue for good reason. And the case law from the Mississippi Supreme Court is . . . I remember the first time reading that. I thought that was somewhat interesting. But here's the context within the modern-day reasoning is that when you have a construction contract, it incorporates by reference a lot of things, all the plan specifications that might be very, very many pages. And as a practical matter, you can't bring everything in there, but the record clearly shows that the contract was approved with Sullivan. And I don't think there's any dispute about that. In fact, Your Honor, I'll just point this out. In answers to interrogatories that . . . I'll give this. It's in the record, pages 437 through 440. This case, as the Court knows, was bifurcated because everybody saw this was going to be an expensive case to try. It involved $4 million fire loss. And we said . . . You'll see the fire marshal's report in there that when our guy went up there and did some soldering, the flames just went everywhere in about 30 seconds. And we pled in our answer that that was due to the cellulose not being treated. It was old newspaper. So it wasn't like he was just some idiot up there. He had never seen anything like that before. So that was going to be an expensive issue. So we decided let's bifurcate it. Let's get this issue of subrogation. If there's subrogation, we win. The case is over. They go home. And in their answers to interrogatories, as I said, that's on page . . . record 437 through 438, the question was asked, what is the basis for the subrogation? And the answer is essentially two things. It is that it was not . . . we didn't bring in the general conditions of the contract, which were incorporated by reference, and that they had some person, Dr. Betsy Collins and Connie Phillips, who said they did not remember that specific provision being incorporated by reference. Of course, that does away with the fact that they had Attorney Tom Hood, who's now deceased. And just by reference, that's Attorney General Jim Hood's dad, as some members of the Court probably already know. And to say that the Attorney General's father didn't know about this incorporation by reference is a little bit ludicrous, I think. Not only that, it shows that in the case of Attorney General Jim Hood's dad, they've scratched through there and took out certain provisions, but they didn't take out the provisions about things being incorporated by reference. So that gets us to what I see is the issue. And that's what I thought was the issue based on their answers to interrogatories. I didn't even know they were going to argue this is just a partial waiver until we filed our brief and they filed their response. And then, to me, for the first time, they raised this issue. And I think that's why Judge missed it on the first shot, because we didn't even address in our initial brief whether 1135, which is the key section, was a complete waiver. We didn't even address that until our reply brief. And the timing of that was there was a long break because of Christmas between their brief and our brief over Christmas break. And then shortly after that, we get an opinion that would look like the judge's clerk had not even looked at our reply brief because they didn't even address 1135. Of course, that's speculation on my part. You did on reconsideration. So why don't you move on to tell us about why you think this is not a full subrogation? Yes, Your Honor. The main reason is, as the court knows under the Mississippi law in most states, in the parole evidence room, you look at the contract itself and you don't have to take into consideration anything extemporaneous if the contract is clear. And so our first to me is clear that this is a complete waiver. The case they had, Your Honor, was on the panel, I think, in that unpublished decision involving Fidelity and Guarantee v. Craig Wilkinson. That case did not have this provision in there, 1135. And, Your Honor, I have included that in the package that I gave you as Exhibit 5, and it's in the record excerpts. And the reason why I've had those when y'all already had the record excerpts, I tried to blow it up some because when you get my age, it's kind of hard to read those small prints, and the record excerpts might not have been too good to begin with. But anyway, 1135 says that if the owner has other insurance policies, real or personal, at or adjacent to the site, under policies separate from those insuring this project, that's exactly what we're talking about. And then it says that the owner shall waive all rights in accordance with the terms of 1137 for damages. Now, that's key. It says for 11.3.5, it's in the record at page 418. But I thought there wasn't, and this is what the district court said, there wasn't a policy separate from the one insuring the project. There was just a policy that covered everything. I mean, it seems to me if you look at the cases that have followed the approach you're advocating for, like the Nebraska Supreme Court case, they don't say 11.3.5 actually including 11.37 should be interpreted, because it shows that if you do have that separate out policy, then you get that type of waiver. But you're saying, I mean, it just seems to me your position is different than the cases you're relying on in trying to say that 11.35 was. I'm not sure. In this case, Your Honor, there was a separate builder's risk policy issued by Zurich who was sued in this case, and they settled the case. So there was a separate policy issued by builder's risk as required by this policy. But I didn't think Liberty Mutual, I thought they had a policy that insured any fire damage. The policy in question in this. It insured any, this property and other properties possibly. Right, not just the project. Correct. Homeowner's insurance. Pardon? Homeowner's. It was not a homeowner's insurance. Well, you know what I mean. Yeah. Property insurance. It's analogous to a homeowner's insurance. Right. It's a commercial policy that the county has that covers the substantial. Well, the problem I have with resting on 11.3.5 is that it says the owner shall waive all rights in accordance with the terms of 11.3.7. So the most you can say is you go back to And that's what the judge went off on, too, Your Honor. And I think that's their best argument. And to me, it's clear in this way. If I have a will and I say I leave all my property to my wife and it does not have an adjective restricting all my property, that's the giving clause. And then below that, it has a procedure where my executrix handles it. But if that was correct, they should have an adjective before the word damages. And there's no word. But when I say in my will that if I pre-decease my wife and I give her all my property in accordance with this subsection, she gets everything. I don't see why you're not embracing 11.3 or at least focusing on it because the majority approach to that provision is to say it's a full waiver if the insurance policy covers everything because the language says or other property insurance applicable to the work. And if the insurance applicable to the work, which in this case covers everything, then there is a full waiver. I mean, that's the majority approach, but you seem to have a different argument. Your Honor, I'm arguing both. And you laugh, but here's the reason. There's a commentary. If the Court has some trouble about what does this really mean, AIA has a commentary. And this commentary came from the claim file of Liberty Mutual. And, Your Honor, it's in Exhibit 6 in that package on record page 445. And it's to 11.3.5. It says, This section extends to the provisions for waiver of subrogation to other property insurance the owner may purchase. Such policies may cover property at or adjacent to the project, or they may replace the property insurance. That's about as inclusive as you can get. And it's your point, Your Honor, when it talks about 11.3.7, it gives the majority approach exactly what Your Honor said. It says that if you don't have a complete waiver, then you've just done away with the whole purpose of the waiver of subrogation, which is to avoid litigation and expenses. And, Your Honor, I think one other thing, too, that's clear is that there was a separate contract between the architect and the school. And it has a complete waiver of subrogation provision in there. I'll get that cite in just a minute, Your Honor. Well, now, you know, what I was you going to have to go to rebuttal in a minute. Yeah. Okay. It's on page, it's Exhibit 4362. My time's up, so I'll get to talk to you in a minute. Thank you, Your Honor. All right, so thank you. Mr. Goldstein. Good morning, Your Honor. Good morning. My name is Jay Goldstein. I'm here with my co-counsel, Albert Malabotsky. We represent Liberty Mutual, the plaintiff below. I just want to take a moment to put in context chronologically why we're here before this court now. The lower court issued very early in the case a scheduling order, as Mr. Lawrence said, where the waiver of subrogation provision was bifurcated. And both sides were afforded the opportunity to take more than three months of discovery, whatever they felt necessary, to address the waiver of subrogation issue. The defendants, the appellant contractors, filed a motion for partial summary judgment. And contrary to what Mr. Lawrence stated to Your Honors, the issue of the Minut rule was specifically raised below. It was raised both in our opposition brief and in our survey file. And in our survey file, and I can give Your Honors the ---- I looked at the opposition brief. It makes the incorporation argument, but I didn't see where it relied on this Minut rule or cited the relevant body of case law. We didn't call out specifically the Minut rule. What we cited in the opposition brief was the Mississippi statute that required a public board to approve contracts in excess of $50,000. And then later, when we got leave by the district court to file a SIR reply, we specifically called out the Minut rule. And our SIR reply is at the Record on Appeal, pages 660 to 667. The normal rule is a reply brief is too late to raise something, let alone a SIR reply. I'm sorry? The normal rule is that a reply brief is too late to raise something. And you're talking about even one step further with the SIR reply. But we were given leave by the court to address some issues that they had raised in their reply. Right, but then you're raising a whole new challenge, saying it's not in the Minuts. Well, we specifically raised the issue, even in the opposition brief, that the general conditions, and this is an undisputed fact, A-201, because this contract was comprised of two different parts, the A-101 piece and the A-201, which is the general conditions in which the waiver of subrogation appears. It is undisputed that the A-201, other than the district court finding it was incorporated, which we believe that was error, but A-201 was never attached to the Minuts, nor was it ever spread upon the Minuts. And under the Mississippi Minuts rule, clearly, unless it's spread upon the Minuts or the term, it's specifically in the Minuts. Even if it's specifically incorporated by reference? Yes. I mean, the cases I read said even if it's in the contract itself, like an arbitration provision, or there's the case saying, I mean, it's astounding to me, actually, that, you know, you have an employment contract, but if the Minuts just say we have an employment contract and don't say the salary is X, you can't enforce that salary, let alone with REF, but it's ‑‑ And as a couple of the different decisions by the Mississippi courts have said, as inequitable as that may sound, they have strictly enforced the Minut rule throughout for more than 100 years, and just recently, as late as January of this year, they once again confirmed in a KPG Jackson County case, again, the same holding they found in October, that the arbitration clause was not going to be enforced because the audit letters, the engagement letters of KPMG were not in the Minuts. No one was disputing that the engagement letters were there, they were signed, but because they were not part of the Minuts themselves, nor the terms specifically in the Minuts, the court refused to enforce the arbitration provision. I guess what the public board has to do is say, we've considered this whole contract, and it's attached, we've considered all of its terms, and I guess that's the way around that. It would have been easy, and if your honors will recall, in each of those cases, they specifically say the burden to make sure that the Minut rule is complied is on the private party seeking to enforce the contract, and in this case, the private parties were Sullivan and its subcontractors that failed to comply with the Minut rule, and we contend that the district court, in essence, did address this issue by saying the A101 contract was approved, but in fact, because even the A101 contract was not attached to the Minuts, the incorporation provision would not be enforceable either. So, unless either you, this court could find that the A101 contract wasn't attached, and therefore the incorporation is not enforceable, or even if you find that the A101 contract meets the Minut rule, clearly, A201, the general conditions, nowhere is mentioned in the Minuts, it wasn't attached to the Minuts, they had the burden to attach it to the Minuts or have the terms spread upon the Minuts. You didn't file a notice of request cross-appeal or certification, right? We did not, and your honor, as we read the cases addressing the scope of this court's jurisdiction under 1292B, what this court has said on many occasions is any issue that is encompassed within the order that's the subject to interlocutory review can be reviewed. The cases that the appellants say in response to say we waive, Liberty Mutual has waived this issue, are all appeals from final judgments, where the jurisdictional issue is very different, where a cross-appeal is necessary. Here, this issue was briefed, it was addressed by the district court, it's clearly an issue encompassed by the court's orders below, and we believe is therefore subject to review falling within this court's jurisdiction under 1292B. Nowell, why don't you get to the waiver of subrogation? I think, Judge, you kind of put your finger on one of the questions you asked. The key provision they're relying upon is 11.3.5, and what that encompasses, even the cases they cite in support, all involve two policy situations, because what 11.3.5 says is the waiver will apply if there's a separate policy covering the non-work for property adjacent to or at the site, but not the work. And clearly, Mr. Lawrence raised the Zurich policy, that's clearly a red herring. That was a policy that was issued to Sullivan, not to Chickasaw. Zurich paid Sullivan directly. The only policy that responded to the damage sustained by Chickasaw was the liberty mutual policy. It's a single policy case. All the damage, both non-work and work, were covered by the liberty mutual policy. It's our position, as supported by the case law, that 11.3.5 is not even triggered in this case. 11.3.5 is irrelevant, and as this Court, albeit in an unpublished decision, but we argue that it's still persuasive in Fidelity Guarantee v. Craig Wilkinson, that had a very substantial identical provision as 11.3.7. They argue, well, it didn't have 11.3.5, but that's irrelevant, because 11.3.5 isn't triggered. This is a single policy. Focusing on 11.3.7, what do you say about the Nebraska Supreme Court decision seemed well-reasoned to me, came out the other way. But it's a two-policy case. That's the difference. Clearly, that's a correct decision, because it said 11.3.5 is triggered because there were two policies involved in that Nebraska Supreme Court case, even the case that followed it. I thought they just said it informed 11.3.7, but I'll look back at it. Well, what the Court said was in interpreting 11.3.5, they said, well, we have two policies. We have a separate policy covering non-work, and we have a second policy covering the work, and therefore when you read the two provisions together, there's a complete waiver to all that. And that's the distinguishing factor to what we have here. We have a single policy covering both non-work and work, and clearly what the district court said was correct. In fact, they said 11.3.5 is irrelevant to this analysis because the only policy here that responded to all the damage was the liberty mutual policy, and therefore. . . I think on 11.3.5 I see that. But I thought what the Nebraska court says in interpreting 11.3.7, it doesn't make sense to say if you have two separate policies, one just for the project and one for the other stuff, that you'd be able to have a full waiver. But if you have, in your case, one policy that covers everything, at the end of the day it's the same insurance, so why shouldn't you have the same result of a full waiver? Well, except that's not the way 11.3.7 reads. It says that the waiver will only be to damage to the work, and what's interesting is they rely on. . . The majority of courts have disagreed. Should we start. . . Given how much division there is in the State courts that have looked at this, I think you'll at least concede that. Should we certify this to the Mississippi Supreme Court? I don't believe that's necessary because this, to me, is not a public policy issue. This is a matter of straight contract interpretation, and it's just reading the two provisions and holding as the district court did. But you're asking us to take the minority, say Mississippi, would follow what every court calls the minority interpretation. Except I don't think it's a question of majority versus minority. It's a question of just looking at the contract provisions and saying 11.3.5 by its very terms is not triggered where there's only a single policy at issue. If you read literally the official commentary that Mr. Lawrence mentions to your honors, it says this section extends the provision of the waiver of subrogation to other property insurance the owner may purchase. That's not what happened here. The owner didn't go out and purchase a separate policy of insurance to cover the non-work property. They already had a policy in place that covered both work and non-work. For the sake of argument, what is the rationale behind having the waiver of subrogation limited to the work from the contractor's perspective? I think the only rationale that one can conclude is that that's what the parties bargained for. Yeah, but if you had a regular lawsuit and the contractor had caused all the damage, and of course we don't know the cause here, but if that was the case, then the contractor would be liable for everything, right? And this insurance, this waiver, switches that, if interpreted as you say. And I agree, but it's nothing unique. I mean, this is what courts have been deciding over the years. We also have a more recent case, and I understand you're talking about majority versus minority, but the Colorado Supreme Court looks at all the provisions and tries to reconcile everything. And they say, again, in a single policy case, 11.3.7 is the only provision, it only waives subrogation as to the damage to the work, and also then says, well, what about the provisions with regard to the contractor's requirement to get liability policy? If you rule there's a complete waiver, then you essentially nullify those provisions that require the contractors to get liability insurance to cover their liability to other property. So, I mean, by complete, by an— Why does that help your position? Why does that help my position? Yeah. Well, because— Because you're saying there's a waiver of sub—oh, I see. So you're saying that if there's this waiver of subrogation that is limited to the work, then the other policy kicks in. Is that right? Well, if there's only—if you read simply 11.3.7 without there being a separate policy as a waiver to all everything, you essentially nullify the other provisions that imposed upon the contractors to provide liability insurance because there would be no reason for them to have liability insurance. Sure. They can still get sued. If your insurance coverage from your client won't cover the whole loss, I mean, there's nothing that prevents the contractor from still being sued for additional damages, right, unless I'm misunderstanding how this works. There's no subrogation if it's waived. You can't recover for Liberty Mutual's expenditures, but the actual company itself that hired the contractor can still file a suit against the contractor to recover for other damages if the policy doesn't cover it. Oh, if they're uncovered damages, you're correct. So that would be a reason to impose an insurance requirement on the contractor. No, it would, but by deciding there's a blanket waiver, you're essentially nullifying those provisions in that circumstance. So what the Colorado Supreme Court case said was you shouldn't, under certain circumstances, nullify the point of those provisions and sometimes enforce them. I mean, you read the contract as a whole and try to give meaning to all the provisions in a unified way, and that's why they said, and it's our position, that 11.3.5 isn't implicated, and just like this court had found in Craig Wilkinson. Even though there wasn't 11.35, there was damage to the work, there was damage to the non-work, and what this court in that unpublished opinion decided was 11.3.7, a comparable position, was only provided a waiver as to damage to the work, and basically we find that decision to be consistent with what the district court found, and the district court followed that, albeit unpersuasive, and decided that the waiver only applies to the work damage, and we can recover for any damage to non-work. Your Honors, do I have any other questions? I don't think so. Thank you. Thank you. Please support. I would like to address briefly the issue about the contract itself was not approved, and in our briefing, initial briefing, in the record on page 456, we pointed out specifically that the two issues that they had raised, based on the reference to the interrogatories that I mentioned to the court before, were some employees were not aware of it, and that the general conditions were not physically attached, and that's all that we knew about. Now, the other argument is that the builder's risk policy is a red herring that was issued by Zurich. Well, the court conceded that they filed suit against Zurich to recover money from Zurich, and that there's also in the record that they did enter into a settlement with Zurich, Liberty Mutual did. Zurich did not file a subrogation case against us because they know that there's a waiver. And then the argument about, well, you know, in fairness, this isn't right, well, you know, in the record on page 454, that's Liberty Mutual's own policy, which specifically authorizes the insurer to waive subrogation. And I agree with the opposing counsel that you look at the whole context of this to see what the intent was. So you've got a waiver, a complete waiver, in the contract between the architect and the school that is without reservation, and it says releases contractors, subcontractors, everybody. And then in addition to that, in the general conditions that we're talking about, there's a waiver of loss of use, too. It says owner, you waive all loss of use, too, not just property damage, but loss of use. And if you don't get loss of use coverage, you can't bring a suit seeking to recover that from anybody. So the clear understanding of all this is waiver, waiver, waiver. And I agree with the court here that they're trying to go off in the words with in accordance. And, again, I can't stress enough that that's – they needed an adjective before the word damages. They should have said work damages. But since they said all damages, and my wife is here. She likes this argument when I make it. When I say that I leave everything to my wife in accordance with subparagraph C, and if my children come along and say, well, that really meant that it really didn't go to her because it goes to the executor and the executor has to administer it in accordance with it. There have only been two cases that have decided this issue conceivably against us. One is the Fidelity and Guarantee Craig Wilson case, which is obviously distinguishable from this case in several ways. First of all, it involves a 1987 edition of A107, which did not have the provision 13.5. And the judge kind of got – if you read their briefs initially, their briefs say that the provisions of A101, 1987 – that's the case that was before your Honor with Fidelity and Guarantee – in this case are identical with no reservations. And the judge bought that argument, and we tried to get him to reconsider it, and he had already staked out his position, I suspect. But to judge's credit, you know, there are not too many judges that will certify an issue once and say, tell me that I'm wrong, Fifth Circuit. So I praise the judge for that. So this is very distinguishable from 11.3.5. But here's the main thing, Your Honor, and if you read the unpublished decision, it said that there was actually a variance in the contract, and I think that's key. There was a letter from the general contractor that in essence said, okay, you take out this insurance policy to cover work, and then you have your homeowner's policy that covers everything else. And it said that the court – the quote is, that buried the insurance responsibilities of the parties from those documents in the contract. My time is up, Your Honor. Thank you. All right, sir. Thank you very much. This is the last day of our sitting. The court will stand and recess.